UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim No. 5-74-B-K |
| | ) |
| WALTER NUSS, | ) |
| | ) |
| Defendant | ) |

**ORDER ON AMENDED MOTION FOR DISCOVERY
AND MOTION TO SUPPRESS**

Walter Nuss has filed an amended motion for discovery (Docket No. 9) seeking the following items:

1. All registration forms, applications, visitor logs or other documents (in paper or electronic form) that provide the names, addresses, telephone numbers and/or campsites for all campground visitors at the Acadia National Park from August 7, 2005 to August 20, 2005.

2. The names, address(es), telephone number(s) and dates of birth for the alleged victim and his parents.

3. Campground maps of the Blackwoods campground at Acadia National Park.

The Government has voluntarily provided the defendant's attorney with the campground maps as requested by item number three. The registration forms in item number one are not documents to be offered by the Government as part of its case and are not generally discoverable under Rule 16 because they do not meet the materiality threshold. Defendant suggests that an "alternate suspect" could be unearthed through his review of these forms. However, the "alternate suspect" theory has no supporting facts to sustain it. Defendant alleges he talked to some man named "John" who was charging his cell phone in the bathroom earlier on the day of the incident. "John," like the defendant, had a

moustache.  Based upon these facts alone Nuss suggests that "John" is an alternate suspect and that he needs to examine two weeks of registration records in an attempt to identify him further.  The Government is not required to produce the requested records absent knowledge on its part that the records contain exculpatory evidence.

Finally, Nuss seeks the names, addresses, and dates of birth of the alleged victim and his parents in order to have the opportunity to properly prepare for trial, specifically for cross examination of the accuser, a right that has constitutional dimensions.  The Government notes that Rule 16 does not require pretrial production of the names of witnesses and further notes that a string of cases have held that it is not an abuse of discretion in a noncapital case for the trial court to refuse to order the Government to produce the names of witnesses prior to trial.  See, e.g., United States v. Jordan, 466 F.2d 99, 101 (4th Cir. 1972).  The cases cited by the Government do not provide me with much helpful guidance as to when the court would properly exercise its apparent discretion to require that the name of a witness be provided to the defendant.  Nor has my independent research revealed any case involving facts similar to these wherein the court compelled early disclosure of a child victim's name.  The Government cites as the reason for its reluctance to produce the complaining witness's name, the "trauma" that the child has experienced and continues to experience as a result of this incident last August.  While the Government could ask for various protective orders regarding the disclosure of the names and addresses of the alleged victim and his parents, it has not chosen to proceed in that fashion.  It simply takes the position that it does not have to disclose the names at this time.  While I have misgivings about that course of action in a case of this nature, I can find no case that provides me with persuasive authority that I could order the

2

immediate production of the names on the basis of the record presently before me. Therefore I **DENY** the amended motion for discovery, but I caution the Government that ultimately the position it is taking could result in a continuance of the trial of this matter.

Nuss has also moved to suppress statements made to park rangers and evidence seized from his truck/camper. (Docket No. 10.) Based upon an evidentiary hearing conducted before me on December 28, 2005, I am satisfied that Nuss was not subject to a custodial interrogation. I am further satisfied that Nuss consented to the search of his camper, indeed he voluntarily, albeit reluctantly, opened the camper for the officers to inspect.

A.   **Custodial Interrogation/Police Coercion**

As the First Circuit Court of Appeals has succinctly explained:

> It is well established that Miranda warnings must be communicated to a suspect before she is subjected to "custodial interrogation." United States v. Ventura, 85 F.3d 708, 710 (1st Cir. 1996). A "custodial situation necessitating Miranda warnings arises . . . where 'there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Masse, 816 F.2d 805, 809 (1st Cir.1987) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). The term "interrogation" encompasses not only express questioning but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (internal footnotes omitted).

U.S. v. Li, 206 F.3d 78, 83 (1st Cir. 2000).

In the present case the park rangers clearly were engaged in the process of questioning Nuss and thus the issue is whether or not that questioning was custodial in nature. Although the rangers skated dangerously close to a custodial event, I am satisfied it never became a situation where the restraint they exercised rose to the degree associated with a formal arrest. The only facts in the record that would suggest custody

3

were the initial statement by Ranger Wilson that the questioning could occur at the picnic site or at park headquarters and the manner in which the rangers parked their vehicle to block egress from the campsite. I do not consider the fact that the officers had sidearms and were wearing park ranger uniforms to be indicative of a custodial situation. In fact, no attempt was ever made to transport Nuss to park headquarters, he was not placed in handcuffs and he was told on at least two occasions that he was not being "detained." The rangers agreed to call his friend to inform her that he would be late for their dinner date, but they never suggested that Nuss would not be free to leave the campsite that evening. Nuss never asked the rangers to move their vehicle so he could leave and their act of parking the vehicle in the driveway was not in and of itself particularly menacing or restrictive. Nuss was free to move around the campsite, and the rangers themselves came and went, making calls to supervisors and trying to determine how to proceed. The duration of the interview, between one and one and one-half hour, was lengthy, considering the relative simplicity of the investigation, but in large part the interview was longer than needed because of Nuss's digressions onto irrelevant topics. I am not convinced that the lengthy nature of the interview transformed a relatively benign situation into a custodial one.

Even in the absence of a Miranda violation the government has the burden to prove by a preponderance of the evidence that the defendant's statements were voluntary and not the product of improper police coercion. Colorado v. Connelly, 479 U.S. 157, 167-68 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972). The allegedly coercive tactic in this case is apparently the "threat" to take Nuss to either "park headquarters" or the "Attorney General," depending upon which version of the events is believed.

4

However, under both Nuss's version and Ranger Wilson's version, this "threat" did not amount to a coercive police tactic.  Nuss does not maintain that the rangers repeatedly threatened to put him in handcuffs nor does he suggest he was threatened with violence or retaliation if he did not talk to them.  He was told it would appear that he was uncooperative if he did not provide them with answers to their questions.  Such a statement hardly rises to the level of a coercive police tactic.

**B.    Consent to Search**

Under the test set forth in <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973), one's consent is voluntary if one's will was not overborne in the sense of suffering a "critically impaired . . . capacity for self-determination."  <u>Id.</u> at 225; <u>see also</u> <u>United States v. Wilkinson</u>, 926 F.2d 22, 25 (1st Cir. 1991) (Breyer, C.J.) (overruled on other grounds as recognized by <u>United States v. Manning</u>, 79 F.3d 212 (1st Cir. 1996)).

In the present case Nuss was faced with the dilemma that often confronts those who are asked to consent to a search.  He had to make a conscious choice whether it would be better for him to consent and appear cooperative or deny consent and bear the consequences.  The fact that Nuss was seventy years old, had never been confronted by law enforcement before, and was nervous about the situation he found himself in certainly factored into his decision-making, but it did not render his ultimate consent involuntary in the sense that it was anything other than his own decision.  Nuss himself, apparently at considerable inconvenience, cranked open the camper.  Had he chosen not to do so, the rangers would have been forced to either obtain a warrant or else forego the search.  Nuss knew they did not have a warrant because he specifically asked them that

question. The fact that he took some time before he decided to allow the search supports my conclusion that it was his voluntary decision to proceed in this fashion.

Based upon the foregoing, I now **DENY** the motion to suppress statements and physical evidence taken from the camper/truck.

*So Ordered.*

Dated  December 29, 2005

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge